UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN FIGURES, JR.,

       Plaintiff,                                              Hon. Janet T. Neff

v.                                                                 Case No. 1:10-CV-430

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying in part and granting in part Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 57 years of age as of the date of the ALJ's decision. (Tr. 23-25). He completed the tenth grade and worked previously as a construction worker, machine operator, and welder. (Tr. 23).

Plaintiff applied for benefits on December 21, 2004, alleging that he had been disabled since November 1, 2002, due to high blood pressure, possible diabetes, epilepsy, possible heart disease, and degenerative arthritis in his neck. (Tr. 110-12, 156). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 47-53). On December 16, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, James Lozer. (Tr. 336-78). In a written decision dated January 17, 2006, the ALJ determined that Plaintiff was disabled beginning December 17, 2005, but not prior thereto. (Tr. 33-41). The Appeals Council remanded the matter back to the ALJ for further findings. (Tr. 42-46).

On November 2, 2007, Plaintiff again appeared before ALJ Prothro, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 379-406). In a written decision dated January 18, 2008, the ALJ determined that Plaintiff was disabled beginning December 16, 2005, but not prior thereto. (Tr. 15-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8).

Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On March 11, 2002, Plaintiff reported to the emergency room because he ran out of blood pressure medication. (Tr. 194-95). The results of a physical examination were unremarkable with no report of lower extremity edema. (Tr. 194).

On April 16, 2002, Plaintiff reported to the emergency room complaining of difficulty breathing. (Tr. 196). Plaintiff also reported that his right hand "falls asleep." (Tr. 196). An examination revealed right ulnar neuropathy, right carpal tunnel, and a positive Tinel's sign,[1] but was otherwise unremarkable. (Tr. 196-97). The examiner reported no evidence of lower extremity edema. (Tr. 196-97).

Treatment notes dated August 27, 2002, indicate that Plaintiff was experiencing "approximately 1+ pretibial edema." (Tr. 200-01).

On November 3, 2002, Plaintiff reported to the emergency room complaining of "bilateral leg swelling intermittently over the last six months." (Tr. 206-07). Plaintiff reported that he was experiencing "no other symptomatology." (Tr. 206). Plaintiff also reported that he "does have a history of hypertension," but had not taken his medication "for quite some time." (Tr. 206). The results of an examination, including an EKG, were unremarkable. (Tr. 206). Specifically, an

---

[1] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on August 4, 2011). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve distribution. *Id.*

examination of Plaintiff's lower extremities revealed "intact" peripheral pulses with "good capillary refill." (Tr. 206).

Treatment notes dated November 14, 2002, indicate that Plaintiff's hypertension was "stable." (Tr. 272). Treatment notes dated January 3, 2003, indicate that Plaintiff's hypertension was "stable." (Tr. 266). Treatment notes dated April 24, 2003, indicate that Plaintiff's hypertension was "stable." (Tr. 262).

An examination conducted on January 30, 2004, revealed no evidence that Plaintiff was experiencing lower extremity edema. (Tr. 212-13). An examination conducted on March 29, 2004, revealed no evidence that Plaintiff was experiencing lower extremity edema. (Tr. 220-21).

On March 2, 2005, Plaintiff was examined by Dr. Bret Bielawski. (Tr. 233-36). Plaintiff reported experiencing hypertension and arthritis. (Tr. 233). Plaintiff also reported experiencing one or two seizures monthly. (Tr. 233). Plaintiff acknowledged, however, that he was not taking any anti-seizure medication. (Tr. 233). Spurling's test[2] was "positive on the left side" and Plaintiff exhibited limited range of motion in his cervical spine. (Tr. 235). The doctor also observed "severe edema" in Plaintiff's lower extremities. (Tr. 234). The results of a physical examination were otherwise unremarkable with no evidence of motor, sensory, strength, or dexterity impairment. (Tr. 234-35). Romberg testing[3] was also negative. (Tr. 235). Dr. Bielawski concluded that the swelling in Plaintiff's legs was caused by obstructive sleep apnea and obesity, for which he

---

[2] A positive Spurling's test suggests the presence of a cervical nerve root disorder. Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical Evaluation*, American Family Physician, May 15, 2000, *available at*, http://www.aafp.org/afp/20000515/3079.html (last visited August 4, 2011).

[3] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on August 4, 2011). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

instructed Plaintiff to begin a focused weight loss program. (Tr. 236). The doctor also concluded that Plaintiff, as a result of his cervical spine impairment, would be unable to perform any work that required him look upward or lift objects above his head. (Tr. 236).

Treatment notes dated July 12, 2005, indicate that Plaintiff's anxiety and depression had improved with medication. (Tr. 249). Plaintiff also reported that he was presently exercising by "walking QOD[4] 60 minutes." (Tr. 249).

A February 12, 2006 examination of Plaintiff's lower extremities revealed "+2/4 pitting pretibial and pedal edema bilaterally." (Tr. 293-94).

On February 17, 2006, Plaintiff participated in an exercise stress test, the results of which revealed no evidence of ischemia, ejection fraction abnormalities, wall motion abnormalities, or abnormal electrocardiographic response. (Tr. 320-21).

Treatment notes dated March 6, 2006, indicate that Plaintiff was experiencing edema in his lower extremities. (Tr. 281).

X-rays of Plaintiff's cervical spine, taken on March 14, 2006, revealed "mild to moderate" degenerative changes. (Tr. 283).

On March 17, 2006, Plaintiff participated in a bilateral lower extremity venous evaluation, the results of which were "normal," with "no evidence of acute deep vein thrombosis or obstruction" and "no evidence of chronic deep venous insufficiency." (Tr. 288).

On June 2, 2006, Plaintiff was examined by Dr. Rima Shah. (Tr. 307-09). Plaintiff reported that his blood pressure was well-controlled with medication. (Tr. 309). Plaintiff reported

---

[4] QOD is a medical abbreviation meaning "every other day." *See* QOD, available at http://www.medicinenet.com/script/main/art.asp?articlekey=54842&page=3 (last visited on August 1, 2011).

that he was complying with his "low-salt diet and dietary restrictions." (Tr. 309). Plaintiff reported that his depression medication "has been working well." (Tr. 309). Plaintiff reported that he experiences sleep apnea for which he uses a CPAP machine. (Tr. 309). With respect to his neck pain, Plaintiff reported that he has "been to the pain clinic," but "declined having any shots in his cervical spine." (Tr. 309). Plaintiff reported that "his neck does not bother him all the time, but when it does, he use[s] Vicodin and Flexeril." (Tr. 309). Plaintiff also reported that he "has been trying to lose weight and has been trying to eat healthy." (Tr. 307). Dr. Shah observed that Plaintiff had "trace pedal edema," but the results of an examination were otherwise unremarkable. (Tr. 307-08).

Treatment notes dated July 13, 2006, indicate that Plaintiff was experiencing "chronic. . .trace pedal edema." (Tr. 306).

On April 4, 2007, Plaintiff was examined by Dr. Malar Vasanthan. (Tr. 302-04). Plaintiff reported that he was experiencing left shoulder pain. (Tr. 302). Plaintiff also requested a "referral to weight loss program." (Tr. 302). An examination of Plaintiff's left shoulder revealed "minimal" tenderness with no evidence of swelling or deformity. (Tr. 303). Plaintiff was able to abduct, flex, extend, internally rotate, and externally rotate his shoulder. (Tr. 303). An MRI of Plaintiff's left shoulder was "grossly normal" with no evidence of "rotator cuff pathology." (Tr. 299). An examination of Plaintiff's extremities revealed that they were "warm [and] well perfused" with "no cyanosis, clubbing or edema." (Tr. 303). Plaintiff was given pain medication. (Tr. 303). The doctor also reported that Plaintiff's high blood pressure was "reasonabl[y] controlled" with medication and that Plaintiff was continuing to use his CPAP machine. (Tr. 304).

On July 18, 2007, Plaintiff was examined by Dr. Vasanthan. (Tr. 299-301). Plaintiff reported that he had lost 52 pounds since his last visit and was doing "well." (Tr. 299). Plaintiff reported that he was walking more and "trying to be more compliant with using his CPAP at night." (Tr. 299). Plaintiff reported that he was experiencing "some" neck and shoulder pain, but otherwise was not experiencing headache, syncope, chest pain, palpitations, shortness of breath, weakness, numbness, joint swelling, or joint pain. (Tr. 300). An examination of Plaintiff's extremities revealed "1+ pitting edema"[5] bilaterally. (Tr. 300). Otherwise, Plaintiff's extremities were "warm" and "well perfused." (Tr. 300). The doctor also observed that Plaintiff's feet were in "good condition." (Tr. 300). Dr. Vasanthan reported that Plaintiff's high blood pressure was "under good control." (Tr. 300).

On July 31, 2007, Plaintiff participated in an exercise stress test, the results of which revealed normal wall motion, normal left ventricular function, no reversible defects, and no evidence of myocardial ischemia. (Tr. 317). Plaintiff "tolerated [the] stress test without complications." (Tr. 318). With respect to Plaintiff's extremities, the examiner reported the presence of "+1/4 pitting pretibial edema bilaterally." (Tr. 315).

**ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from peripheral edema, arthritis, obesity, and hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of

---

[5] Edema is "observable swelling from fluid accumulation in body tissues." *See* Edema, available at http://www.medicinenet.com/edema/article.htm (last visited on August 4, 2011). If the application of finger pressure to the swollen area "causes an indentation that persists for some time after the release of the pressure, the edema is referred to as pitting edema." *Id.*

Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-20). The ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 23). The ALJ further found that while Plaintiff was disabled as of December 16, 2005, prior to that date there existed a significant number of jobs which he could perform despite his limitations. (Tr. 23-25). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[6] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[7] subject to the following limitations: (1) he can lift 20 pounds occasionally and 10 pounds frequently; (2) he requires a job that permits him to sit or stand at his option; (3) he can sit for six hours during an 8-hour workday; (4) he can stand and/or walk for six hours during an 8-hour workday; (5) he cannot perform constant pushing or pulling activities with his upper extremities; (6) he can only occasionally stoop, kneel, crawl, or climb ramps/stairs; (7) he can never crouch or climb ladders/ropes/scaffolds; (8) he can never perform bilateral, prolonged overhead work activities; (9) he must avoid concentrated exposure to vibration with both upper extremities; and (10) he must avoid all exposure to hazards such as moving machinery and unprotected heights.  (Tr. 20, 405).

---

[7] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 7,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 405-06). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

Before discussing the basis for the ALJ's decision, a brief discussion of the medical-vocational guidelines is necessary. The medical-vocational guidelines, also known as the "grids,"

consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Commissioner of Social Security*, 20 F. Supp.2d 1133, 1134 (W.D. Mich. 1998).

The ALJ found that prior to December 16, 2005, Plaintiff possessed the following vocational factors: (1) was limited to light work; (2) was closely approaching advanced age; (3) possessed a limited education; and (4) his previous work experience was skilled or semiskilled, skills not transferrable. (Tr. 24). According to the Grids, an individual possessing these particular vocational factors is considered "not disabled." *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.11. Relying on the vocational expert's testimony, therefore, the ALJ found that Plaintiff was not disabled prior to December 16, 2005. As the ALJ noted, however, as of December 16, 2005, Plaintiff attained the age of 55, which is considered "advanced age" under the medical-vocational guidelines. According to the Grids, an individual of advanced age possessing Plaintiff's other vocational factors is considered "disabled" under the Grids. *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.02. Accordingly, the ALJ found that Plaintiff was disabled beginning December 16, 2005.

      a.      The ALJ Properly Evaluated the Medical Evidence

In an undated letter, Dr. Bolan reported that Plaintiff experiences edema "on a daily basis" which causes him to experience pain in his lower extremities. (Tr. 244). The doctor reported that Plaintiff was limited to work that allows him to elevate his feet above his heart for 30 minutes every hour and does not require him to be on his feet for more than 15 minutes at one time or more than two hours throughout the day. (Tr. 245). Dr. Bolan reported that Plaintiff could only perform work that did not require extensive contact with the general public and, moreover, that Plaintiff "could" be absent from work 3-4 days monthly "because of his pain medications." (Tr. 245). In a subsequent letter, authored sometime after the initial denial of Plaintiff's claim for benefits, Dr. Bolan reported that Plaintiff was limited to "sit down work" due to the chronic swelling of his lower extremities. (Tr. 278-79). Plaintiff asserts that because Dr. Bolan was his treating physician, the ALJ was required to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

13

235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ declined to give controlling weight to Dr. Bolan's opinion on the ground that it was inconsistent with the objective medical evidence and the findings on examination. As the ALJ observed, the results of a March 17, 2006 bilateral lower extremity venous evaluation were "normal" with "no evidence of acute deep vein thrombosis or obstruction" and "no evidence of chronic deep venous insufficiency." As the ALJ also observed, numerous examinations revealed either that Plaintiff was experiencing no lower extremity edema or that he was experiencing edema

14

insufficiently severe to warrant the extreme limitations asserted by Dr. Bolan. Furthermore, Dr. Bolan's own treatment notes do not support the limitations identified above. (Tr. 225-32, 244-77). In this respect, the Court especially notes a July 15, 2005 treatment note, authored by Dr. Bolan, indicating that Plaintiff was walking for 60 minutes every other day. (Tr. 249).

Plaintiff takes issue with the fact that certain evidence on which the ALJ's analysis relied post-dates December 16, 2005, the date on which the ALJ found him disabled. Considering the dearth of medical evidence in this matter and that the evidence in question is reasonably proximate in time to the date on which Plaintiff was found to be disabled, the Court finds such evidence relevant and its consideration proper. *See, e.g., Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at a preceding time"); *DeVoll v. Commissioner of Social Security*, 2000 WL 1529803 at *4 (6th Cir., Oct. 6, 2000) (same); *Potter v. Astrue*, 2009 WL 529861 at *21 (M.D. Tenn., Mar. 2, 2009) (same); *Wheaton v. Astrue*, 2009 WL 4043076 at *11 (E.D. Mich., Nov. 19, 2009) (same).

In short, the medical evidence simply fails to support the limitations expressed by Dr. Bolan. The Court finds, therefore, that there exists substantial evidence to support the ALJ's decision to afford less than controlling weight to Dr. Bolan's opinion.

b.      The ALJ's RFC Determination is Supported by Substantial Evidence

As noted above, the ALJ found that once Plaintiff attained "advanced age" that he was disabled pursuant to the Grids. Plaintiff asserts that he should have been considered disabled under the Grids as of November 1, 2002, the alleged onset date of his disability. Specifically,

Plaintiff asserts that had the ALJ found that he was limited to the performance of sedentary work, he would have been considered disabled pursuant to Rule 201.10 as of November 1, 2002. Plaintiff asserts that given the ALJ's specific findings, he should have been deemed capable of no more than sedentary work.

The ALJ found that Plaintiff was capable of performing light work subject to certain restrictions. As previously noted, light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Moreover, light work involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." Thus, the ALJ expressly found that Plaintiff can perform the lifting and walking/standing requirements of light work. The ALJ recognized, however, that Plaintiff's ability to perform the complete range of light work was limited by certain other limitations, including the need for a sit/stand option and limited use of his upper extremities. Contrary to Plaintiff's assertion, the inclusion of a sit/stand option is not inconsistent with a finding that the claimant can perform a limited range of light work. *See, e.g., Coulter v. Commissioner of Social Security*, 24 Fed. Appx. 305, 306-07 (6th Cir., Nov. 2, 2001).

In sum, in articulating Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing a limited range of light work. This determination is supported by the evidence of record. Accordingly, Rule 201.10 (applicable where a claimant is limited to sedentary work) is inapplicable in this matter.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: August 12, 2011              /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge